**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF STATE
2201 C Street NW
Washington, D.C. 20520,

and

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
2707 Martin Luther King Jr. Avenue SE
Washington, D.C. 20528,

*Defendants*.

Civil Action No. ______________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This is a case brought under the Freedom of Information Act ("FOIA") related to the Trump Administration's plan to revoke *en masse* B1 and B2 visas for individuals who subsequently sought or are seeking asylum (the "Mass Visa Revocation"). The plan was publicly reported in August 2026, with State Department spokesman Tommy Pigott stating that Defendant U.S. Department of State ("DOS") is coordinating with Defendant Department of Homeland Security ("DHS") to identify and revoke such visas. If the plan moves forward, this would be the largest visa revocation effort in history, potentially affecting up to 200,000 individuals.

2. Noncitizens physically present in the United States have the statutory right to apply for asylum, which is a humanitarian immigration pathway for those who are unable or unwilling to return to their country of nationality or last habitual residence due to persecution or a well-

founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

3. Given the importance of this issue to the communities it serves and the lack of public information surrounding the Administration's plan, on September 11, 2026, Plaintiff Muslim Advocates filed a FOIA request (the "Request") with Defendants, seeking specific information related to the development and implementation of the Mass Visa Revocation.

4. To date, Defendants have not produced a single document or made any determination regarding the Request. Defendants have wholly failed to comply with their obligations under FOIA.

5. Plaintiff brings this action under FOIA, 5 U.S.C. § 552, *et seq.*, for declaratory, injunctive, and other appropriate relief to compel the disclosure and release of the documents and information it seeks from Defendants.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346, and 5 U.S.C. § 552(a)(4)(B).

7. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because a substantial portion of the events giving rise to this action occurred in this District, Defendants maintain in this District records and information subject to the Request, and Plaintiff Muslim Advocates has its principal place of business in this District.

8. Because Defendants DHS and DOS have failed to comply with the time limits imposed by FOIA, thus constructively denying Plaintiff's requests, Plaintiff has exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i). Plaintiff Muslim Advocates is therefore entitled to seek relief directly from this Court. 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9. Plaintiff Muslim Advocates is a non-profit organization headquartered in Washington, D.C. that works to ensure the civil rights for Americans of all faiths through national legal advocacy, litigation, policy engagement, and civic education. Muslim Advocates also regularly disseminates information to the public through its website, social media platforms, and email distribution lists. Muslim Advocates is a "person" within the meaning of 5 U.S.C. § 551(2).

10. Defendant Department of State is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DOS is the executive department responsible for international relations and is an agency of the United States. DOS has possession and control over the documents and information requested by Plaintiff under FOIA.

11. Defendant Department of Homeland Security is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is the executive department responsible for enforcing federal immigration laws and is an agency of the United States. DHS has possession and control over the documents and information requested by Plaintiff under FOIA.

## STATUTORY BACKGROUND

12. The Freedom of Information Act provides that any member of the public may request records from a United States agency. Upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," by 30 business days—whether it will comply with a request and notify the requestor of its determination and reasoning in writing. 5 U.S.C. § 552(a)(6)(A)(i)–(B)(i). This determination must also timely indicate the scope of the documents the office intends to produce and the exemptions, if any, that it will apply to withhold documents.

13. When a requestor seeks expedited processing of the FOIA request, the agency's "determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the [requestor], within 10 days after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii).

14. FOIA requires agencies to provide expedited processing when the requestor "demonstrates a compelling need," *id.* § 552(a)(6)(E)(i)(I), which includes an "urgency to inform the public concerning actual or alleged Federal Government activity," when the requestor is "primarily engaged in disseminating information," *id.* § 552(a)(6)(E)(v)(II).

15. When expedited processing is granted, the agency "shall process [the request for records] as soon as practicable." *Id.* § 552(a)(6)(E)(iii).

16. An agency's denial of a request for expedited processing and its failure to respond in a timely manner to such a request is subject to judicial review under 5 U.S.C. § 552(a)(4)(B). *Id.* § 552(a)(6)(E)(iii).

17. In response to a FOIA request, an agency must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions after engaging in a reasonable search for responsive records, including of any field offices that may possess relevant materials. 5 U.S.C. § 552(a)(3)(A), (a)(3)(C), (b)(1)–(9).

18. Although a requestor under FOIA must typically appeal agency action administratively before commencing litigation, if the agency has failed to abide by its obligations and issue a determination within the statutory timeframe, the administrative appeals process is considered exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

19. Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B).

20. A requestor may also seek reduced fees or a waiver of fees associated with the processing of the Request. *Id.* § 552(a)(4)(A).

21. FOIA requires that agencies waive search and review fees and limit fees to "reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media." *Id.* § 552(a)(4)(A)(ii)(II).

22. A "representative of the news media" is defined as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* § 552(a)(4)(A)(ii)(III).

23. Agencies are also required to produce documents without charge or at a reduced charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

24. Where the agency "has failed to comply with any time limit" under 5 U.S.C. § 552(a)(6), the agency "shall not assess any search fees," "or in the case of a [representative of the news media], duplication fees." *Id.* § 552(a)(4)(A)(viii)(I).

25. Agency determinations regarding requests for fee waivers are subject to judicial review under 5 U.S.C. § 552(a)(4)(A)(vii).

## FACTUAL BACKGROUND

### Mass Visa Revocation

26. On August 24, 2026, it was publicly reported that Defendant Department of State, in coordination with Defendant Department of Homeland Security, intends to revoke "B1 and B2 visas issued between 2016 and 2026 whose holders have sought asylum or are now seeking

asylum." Ex. A, Matthew Lee, *US Set for Largest Mass Visa Revocation in History Targeting Up To 200,000 Foreigners, Officials Say*, Associated Press (Aug. 24, 2026), https://apnews.com/article/trump-rubio-visas-revoke-e9c14fdfd0ada439d2b9d8694e678a46.

27. B1 and B2 visas are non-immigrant visas issued to those traveling to the United States for business, tourism, or other limited purposes.

28. A non-immigrant visa permits an individual to enter the United States for as long as the visa remains valid and to remain in the United States for the duration of their authorized stay, up to a maximum of six months for an initial stay and a maximum of one year for an extension of stay.

29. Individuals whose B1 or B2 visas are revoked will not be permitted to enter or re-enter the United States, unless they have another form of visa or documentation, and may be subjected to detention at ports of entry.

30. In some circumstances, individuals inside the United States at the time their B1 or B2 visa is revoked may be subjected to detention, removal proceedings, and/or deportation.

31. If an individual is within the United States at the time their B1 or B2 visa is revoked and they have no pending immigration application or other form of authorization to remain in the United States, they may begin to accrue unlawful presence upon the revocation.

32. Accrual of unlawful presence can negatively impact an individual's ability to re-enter the United States and a break in lawful presence may have adverse consequences for future immigration benefit applications.

33. Noncitizens physically present in the United States have the statutory right to apply for asylum. 8 U.S.C. § 1158(a)(1).

34. To date, there has been no formal announcement from DOS, DHS, or any other agency regarding the implementation of the Mass Visa Revocation, nor has any further information been publicly released.

35. The records Plaintiff seeks will inform the public about the implementation of a government activity that is of interest to the public[1] and that may impact up to 200,000 individuals.[2] Furthermore, the requested information will allow Plaintiff, attorneys, and other service providers to understand the relevant policies, procedures, and practices and thus effectively serve and advise the hundreds of thousands of individuals potentially affected by the Mass Visa Revocation.

**Plaintiff's FOIA Request**

36. On September 11, 2026, Plaintiff Muslim Advocates submitted nearly virtually identical FOIA requests to Defendants DOS and DHS, seeking records relating to the development and implementation of the Mass Visa Revocation. *See* Ex. B, Muslim Advocates' FOIA Request

[1] *See, e.g.*, Ex. A; Nardine Saad, *US to Revoke Visas of Short-Term Visitors Seeking Asylum*, BBC (Aug. 25, 2026), https://www.bbc.com/news/articles/c9qrg82dvjqo; Sergio Martínez-Beltrán, *Trump Administration Plans to Revoke Up To 200,000 Visas, Official Says*, NPR (Aug. 25, 2026), https://www.npr.org/2026/08/25/nx-s1-5944058/us-largest-mass-visa-revocation-200-000-foreigners; Victoria Craw, *State Dept. to Revoke Tourist, Business Visas for Those Who Claimed Asylum*, Washington Post (Aug. 25, 2026), https://www.washingtonpost.com/immigration/2026/08/25/state-dept-revoke-tourist-business-visas-those-who-claimed-asylum/; Ryan Mancini, *Trump Administration Preparing to Revoke Visas of Up To 200K Foreigners in Largest Mass Visa Revocation Ever*, The Hill (Aug. 24, 2026), https://thehill.com/homenews/administration/6048047-mass-b1-b2-visa-revocations/; *Trump Administration Plans to Revoke B1, B2 Visas of 200,000 Asylum Seekers*, Al Jazeera (Aug. 25, 2026), https://www.aljazeera.com/news/2026/8/25/us-plans-to-revoke-business-tourism-visas-of-200000-asylum-seekers; Eduardo Orbea et al., *How to Know if Your Visa Was Revoked by the U.S. Government*, NBC4 Washington (Aug. 26, 2026), https://www.nbcwashington.com/news/national-international/how-to-know-if-visa-revoked-by-us-government/4146879/; Hunter Caparelli, *What Planned Mass Visa Revocations Could Mean in Upstate New York*, Spectrum News 1 (Aug. 26, 2026), https://spectrumlocalnews.com/nys/buffalo/news/2026/08/26/mass-us-visa-revocation.

[2] Ex. A.

to Defendant DHS (Sep. 11, 2026); Ex. C, Muslim Advocates' FOIA Request to Defendant DOS (Sep. 11, 2026).

37. Specifically, Plaintiff Muslim Advocates requested the following records,[3] documents, and/or information which were prepared, received, transmitted, collected, and/or maintained by DOS and/or DHS, including any component agencies of DOS and DHS:

a. All policies, practices, procedures, guidance, instructions, directives, memoranda, communications, notes, and any other records pertaining to the Mass Visa Revocation, its development, and its implementation;

b. Interagency guidance, policies, practices, memoranda, and communications shared between DOS and DHS relating to the processes by which the agencies identify individuals whose visas are, will be, or are likely to be subject to the Mass Visa Revocation;

c. Non-identifying information that reflects country of origin and/or ethnic background of individuals whose visas are, will be, or are likely to be subject to the Mass Visa Revocation; and

[3] "Records" is intended in the broadest possible sense and includes without limitation all records or communications preserved in electronic or written form, including but not limited to correspondence, regulations, directives, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, legal and policy memoranda, minutes or notes of meetings and phone calls, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, cables, text communications between phones or other electronic devices (including, but not limited to, communications sent via SMS or other text, Blackberry Messenger, iMessage, WhatsApp, Signal, G-Chat, or social media direct message), training materials or studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

d. Records describing the processing of the Request, such as records sufficient to identify the search terms used and the search queries conducted and records sufficient to identify the locations and custodians searched.

*See* Ex. B; Ex. C.

38. Additionally, the request to Defendant DOS sought "[c]ables sent to or received from an overseas DOS post pertaining to the Mass Visa Revocation and/or its implementation." *See* Ex. C.

39. Plaintiff sought expedited processing due to the magnitude of public interest and the "compelling need" for greater transparency regarding the Mass Visa Revocation and because Plaintiff is "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 6 C.F.R. § 5.5(e) (Defendant DHS expedited processing regulation); 22 C.F.R. § 171.12(d) (Defendant DOS expedited processing regulation).

40. Plaintiff also sought a fee waiver on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government" and "is not primarily in the commercial interest" of Plaintiff, 5 U.S.C. § 552(a)(4)(A)(iii), and in light of Plaintiff's role as a "representative[] of the news media," *id.* § 552(a)(4)(A)(ii)(II).

41. Under Defendant DHS regulations, disclosure is in the public interest when the request concerns "identifiable operations or activities of the federal government" and disclosure would be "meaningfully informative about government operations or activities," "contribute to the understanding of a reasonably broad audience of persons interested in the subject," and enhance the public's understanding of the subject "to a significant extent." 6 C.F.R. § 5.11(k)(2).

42. Under Defendant DOS regulations, disclosure is in the public interest when disclosure “would shed light on the operations or activities of the government,” is “meaningfully informative about government operations or activities,” and “contribute[s] to the understanding of a reasonably broad audience of persons interested in the subject.” 22 C.F.R. § 171.16(j)(2).

43. The Mass Visa Revocation is an anticipated and identifiable federal government operation or activity.

44. The only information available to the public is that the Mass Visa Revocation is forthcoming and will be conducted by Defendants. There is no publicly available information about the development or implementation of the Mass Visa Revocation.

45. The estimated 200,000 individuals that would be impacted by the Mass Visa Revocation are a broad audience with interest in the subject of Plaintiff’s Request.

46. Plaintiff is a 501(c)(3) non-profit organization with no commercial interest in the Request.

47. Plaintiff has previously been granted fee waivers for other FOIA requests relating to publicly announced immigration-related actions based on findings that the requested records would contribute to the public’s understanding and disclosure would not primarily be in Plaintiff’s commercial interest.

48. Plaintiff has also previously been treated as a media requestor for purposes of a fee waiver request.

**Defendant DHS’s Response**

49. To date, Defendant DHS has not provided a substantive response to Plaintiff’s Request.

50. On September 14, 2026, Defendant DHS acknowledged by email that it received Plaintiff's request on September 11, 2026. *See* Ex. D, Acknowledgment Email from DHS (Sep. 14, 2026). In that email, Defendant DHS advised that its "goal is to respond within 20 business days of receipt" but noted that "FOIA does permit a 10-day extension of this time period in certain circumstances." *Id.*

51. Defendant DHS did not expressly invoke the 10-day extension. *Id.*

52. Defendant DHS further advised that it would charge Plaintiff "in accordance with the DHS FOIA regulations, as they apply to media requesters," thus approving the portion of Plaintiff's fee waiver request made pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), but it did not respond to the portion of Plaintiff's fee waiver request made pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). *See* Ex. C.

53. Without the 10-day extension, Defendant DHS's final response was due on or before October 9, 2026. With the 10-day extension, which Defendant DHS referenced but did not invoke, Defendant DHS's final response was due on or before October 26, 2026.

54. Defendant DHS's response to Plaintiff's request for expedited processing was due on or before September 21, 2026.

55. Defendant DHS has not communicated with Plaintiff regarding this request since sending the acknowledgment letter, has made no determination on the Request, and has not produced any records.

56. Furthermore, Defendant DHS has not responded to or communicated with Plaintiff regarding the expedited process request and provided only a partial response to Plaintiff's fee waiver request.

**Defendant DOS's Response**

57. To date, Defendant DOS has not provided a substantive response to Plaintiff's Request.

58. On September 11, 2026, Defendant DOS acknowledged receipt of Plaintiff's Request by email and advised that additional correspondence would be forthcoming if Plaintiff requested expedited processing or a fee waiver, or if unusual circumstances apply. *See* Ex. E, Acknowledgment Email from DOS (Sep. 11, 2026).

59. On September 23, 2026, Defendant DOS sent a letter by email purporting to require Plaintiff to provide written consent or authorization for access to what it deemed to be personal records containing information about private individuals. The letter listed four valid forms of authorization and directed Plaintiff to send authorization documentation by November 4, 2026.

60. That same day, Plaintiff responded with a letter by email clarifying that the Request does not seek the disclosure of any personal records or information about private individuals and therefore that the authorization DOS requested is not required. Plaintiff advised Defendant DOS that it continued to expect the agency's substantive response within twenty business days of September 11, 2026—the date the agency received Plaintiff's Request.

61. Without the 10-day extension, Defendant DOS's final response to Plaintiff was due on or before October 9, 2026. At the latest, even with the 10-day extension, which it did not invoke, Defendant DOS's final response was due on or before October 26, 2026.

62. Defendant DOS's response to Plaintiff's request for expedited processing was due on or before September 21, 2026.

63. Defendant DOS has sent no further correspondence since the September 23, 2026, email, has made no determination on the Request, and has not produced any records.

64. Furthermore, Defendant DOS has not responded to or communicated with Plaintiff regarding the expedited processing and fee waiver requests.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act
### 5 U.S.C. § 552(a)

65. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as repeated and incorporated herein.

66. Defendants have violated 5 U.S.C. § 552(a)(6)(A)–(B) and applicable regulations promulgated thereunder by failing to determine whether to comply with Plaintiff's Request and communicate such determination to Plaintiff within 30 days.

67. Defendants' failure to timely release agency records in response to Plaintiff's request has violated 5 U.S.C. § 552(a)(3)(A).

68. Defendants have violated 5 U.S.C. § 552(a)(3)(C)–(D) by failing to make reasonable efforts to search for records responsive to Plaintiff's request.

69. Defendant DOS failed to grant Plaintiff's request for a fee waiver, thereby denying Plaintiff's right under 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii), and Defendants' own regulations.

70. Defendant DHS failed to fully grant Plaintiff's request for a fee waiver, thereby denying Plaintiff's right under 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' own regulations.

71. Defendants failed to make and communicate a determination on Plaintiff's request for expedited processing, in violation of 5 U.S.C. § 552(a)(6)(E)(ii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

72. Order Defendants to conduct a full, adequate, and prompt search for all records responsive to Plaintiff's Request, with the cut-off date for such searches being the date the Request is fulfilled;

73. Order Defendants to immediately process and release all records responsive to Plaintiff's Request;

74. Declare Defendants' failure to determine within the statutorily appointed 30 days whether to comply with the Request and timely notify Plaintiff of such determination and its reasoning, as alleged above, is unlawful under FOIA;

75. Declare Defendants' failure to search for and disclose to Plaintiff all records that are responsive to the Request, as alleged above, is unlawful under FOIA;

76. Enjoin Defendants from charging Plaintiff search, review, or duplication fees for the processing of the Request;

77. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

78. Grant any further relief as the Court may deem just and proper.

Dated: November 11, 2026

Respectfully submitted,

*/s/ Melissa Keaney*

Melissa Keaney (D.D.C. Bar No. CA00064)
Nargis Aslami (D.C. Bar No. 90033495)*
Reem Subei*
MUSLIM ADVOCATES
P.O. Box 34440

Washington, D.C. 20043
(202) 897-2622
melissa@muslimadvocates.org
nargis@muslimadvocates.org
reem@muslimadvocates.org

**pro hac vice* application forthcoming